Fruehauf Corporation, Independent Metal Division, Petitioner *v.* Workmen's Compensation Appeal Board and Howard W. Cornell, Respondents.

Argued March 7, 1977, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*James R. Miller,* with him *Dickie, McCamey & Chilcote,* for appellant.

*C. Jerome Moschetta,* with him *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER, July 28, 1977:

Fruehauf Corporation (Fruehauf) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to Howard W. Cornell. Benefits were awarded for permanent and total disability resulting from an occupational disease as defined in Section 108(n) of The Pennsylvania Workmen's Compensation Act[1] (Compensation Act).

Cornell, who prior to 1961 had been employed as a coal miner for many years, worked for Fruehauf from July 1961 to July 1974 as an arc welder. In the performance of his duties as a welder, Cornell utilized

---

[1] Act of June 2, 1915, P.L. 736, *as amended, added* by the Act of October 17, 1972, P.L. 930, §1, 77 P.S. §27.1(n).

electrodes of different sizes containing various filler wires which would melt when an arc was struck between the electrode and the metal to be welded. This process generated dust, smoke, and fumes, the exact composition of which was unknown to Cornell. The fumes, which were abundantly and regularly present, would come up under the protective hood worn by Cornell whenever he welded.

Cornell applied for benefits, and hearings were held before a referee. At those hearings, evidence from two pulmonary disease specialists indicated that Cornell was permanently and totally disabled by arc welders' pneumoconiosis and anthracosilicosis as a result of his total and cumulative exposure to dust in the mines as well as the extents of exposure while working as a welder. One specialist, Dr. J. D. Silverman, noted the difficulty in separating the two forms of pneumoconiosis in the lungs. The distinction, he explained, is made on the basis of an occupational history indicating the types of dust to which an individual has been subjected. Dr. Silverman also testified that arc welders' pneumoconiosis is peculiar to the occupation of arc welding, that it is not a disease the general population can contract, and that exposure to arc welding constitutes an occupational pulmonary hazard.

In his decision, the referee found the following essential facts:

6. During all of his employment as a welder with the defendant the claimant was exposed to noxious dusts, gasses, and fumes emanating from the welding operation and peculiar to said occupation.

. . . .

8. On January 10, 1975 the claimant became permanently and totally disabled due to

pneumoconiosis; namely, anthracosilicosis and arc-welder's pneumoconiosis.

9. The aforementioned permanent and total disability is a direct result of his exposure to the hazard of noxious dusts, gasses, and fumes during all of his employment as a coal miner and welder including the period of exposure from July 1, 1973 through July 26, 1974.

On the basis of his findings, the referee awarded Cornell disability benefits under the Compensation Act for an occupational disease as defined in Section 108 (n). When the Board affirmed the award, Fruehauf appealed to this Court.

Fruehauf generally contends that the above findings are not supported by competent evidence. It further asserts that, because the award under Section 108(n) was based on those findings, it is erroneous. Essentially, Fruehauf seeks to have us declare that there is not substantial evidence of record to support findings that Cornell was exposed to a hazard, that such a hazard was related to the disease of arc welders' pneumoconiosis, or that the disease arose out of and in the course of Cornell's employment with Fruehauf.

In order to properly deal with Fruehauf's complex assertions, we must examine the statutory requirements of the Compensation Act. To receive benefits for an occupational disease under this statute, a claimant must show, *inter alia*, that he suffers from a disease as defined in Section 108 and that the disease arose out of and in the course of his employment. *See* Section 301(c) of the Compensation Act, 77 P.S. §411.

In the majority of cases, it is not difficult to determine whether a particular condition is an occupational disease within the meaning of Section 108. With the exception of subsection (n), all the diseases there enumerated are identified and their causative

factors indicated.[2] The pathologic effects of these diseases are well known, and the required occupational exposure is often easily demonstrated.

However, the foregoing does not apply to subsection (n), generally known as the catchall or omnibus provision. The intent of this subsection is to bring into the fold of coverage each new occupational disease as medical science verifies it and establishes it as such, without the need for special legislative recognition by addition to the scheduled diseases or otherwise. 2 A. Barbieri, *Pa. Work. Comp.* §7.05 (1975). It is therefore not surprising that the requirements of this subsection differ in form from those of the other subsections.

The subsection contains three requirements.[3] First,

---

[2] Subsections (a) to (d) and (g) refer to poisoning by specific elements or compounds. Subsection (e) refers to Caisson Disease and indicates that compressed air is the causative factor. Radium poisoning and disability due to radioactive particles or X-rays is the subject of subsection (f). Subsection (h) deals with skin cancer or ulceration due to specified substances. Subsection (i) generally indicates the causative factors of compensable skin infection and inflammation, including dusts, liquids, fumes, gasses, or vapors. Wool, hair, bristles, hides, skins and bodies of animals are in subsection (j) indicated as the causative factors of anthrax. The causative factor of silicosis is identified as the dust of silicon dioxide in subsection (k), while subsection (*l*) identifies asbestos as the causative factor of asbestiosis and cancer. In subsection (m) tuberculosis and serum and infectious hepatitis are mentioned. While the causative factors of these diseases are not expressly indicated, they are well known and thus indicated by implication. Diseases of the heart and lungs caused by extreme overexertion of firemen or exposure to heat, smoke, fumes, and gasses are treated in subsection (o). Subsections (p) and (q) refer to byssinosis caused by cotton and specific diseases caused by coal dust, respectively. *Cf.* Section 108 of The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §1208 (Disease Act), the provisions of which are almost identical to those of Section 108 of the Compensation Act.

[3] Section 108(n) of the Compensation Act provides:

it requires that a claimant be exposed to a disease by reason of his employment. Stated differently, a claimant must show that the occupational disease is a hazard[4] of his employment and that he was exposed to

---

   All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause, partial loss of hearing in one or both ears due to noise; and the diseases silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

[4] The term "hazard," while not found in Section 108, has nevertheless been employed in general reference to the requirements of the various definitional subsections. Hazard has come to designate the presence of the causative factors of an occupational disease. Cf. *Utter v. Asten-Hill Manufacturing Co.*, 453 Pa. 401, 309 A.2d 583 (1973) (hereinafter *Utter-Bambrick*) (lung cancer caused by exposure to asbestos) ; *Chilcote v. Leidy*, 207 Pa. Superior Ct. 345, 217 A.2d 764 (1966) (evidence that free silicon dioxide was present necessary to prove silica hazard) ; *Scott v. United States Steel Corp.*, 203 Pa. Superior Ct. 459, 201 A.2d 243 (1964) (cancer could have been hazard because cancer-producing agents were present) ; *Webster v. Grove City College*, 198 Pa. Superior Ct. 475, 181 A.2d 924 (1962) (employment in an occupation having a silica hazard exists only where an employee is subjected to the hazard of exposure to the dust of silicon dioxide) ; *McGarvey v. Butler Consolidated Coal Co.*, 157 Pa. Superior Ct. 353, 43 A.2d 623 (1945) (exposure to silica dust while employed necessary to establish silica hazard in employment), all of which deal with Section 108 of the Disease Act.

   Hazards may be classified as factory hazards and occupation or industry hazards. Cf. *McGarvey, supra* (distinction between evidence of silica hazard in bituminous mining industry or in the occupation of cutter and loader, in general, and evidence that where claimant worked he was exposed to silica dust) ; *Metz v. Quakertown Stove Works*, 156 Pa. Superior Ct. 70, 39 A.2d 534 (1944) (showing that particular factory or plant where claimant worked had a silica hazard distinguished from showing that occupation or industry had a silica hazard).

it.[5] To satisfy this requirement, a claimant may reasonably identify or describe the causative factors of the disease,[6] demonstrate that the factors are significantly present in his employment,[7] and show that he was exposed to this significant presence.

---

The classification of a hazard therefore depends on the breadth of the causative factors' presence. If proof establishes that where a claimant works a disease's causative factors are present, then a factory hazard has been shown. If, on the other hand, evidence establishes that the causative factors of a disease are present in the industry or occupation, then an industry or occupation hazard has been shown.

This distinction is significant in regard to the definitional requirements of Section 108(n) of the Compensation Act and in regard to the rebuttable "course of employment" presumptions of both acts. *See* Section 301(e) of the Compensation Act, *added* by the Act of October 17, 1972, P.L. 930, §3, 77 P.S. §413, and Section 301 (f) of the Disease Act, 77 P.S. §1401(f).

[5] *Cf. Scott, supra* note 4 (construing identical language in Section 108(n) of the Disease Act, 77 P.S. §1208(n), *added* by the Act of February 28, 1956, P.L. (1955) 1095, §1).

[6] *See Industrial Services Contracting, Inc. v. Wilson,* 28 Pa. Commonwealth Ct. 83, 367 A.2d 377 (1977) (hereinafter *ISC*), where, in a case concerning Section 108(n) of the Compensation Act, coal dust and noxious dusts produced by arc welding were identified as the causative factors of anthracosilicosis and arc welders' pneumoconiosis, respectively; *Imperial Food Products v. Tomarelli,* 28 Pa. Commonwealth Ct. 150, 367 A.2d 732 (1977), where, in a case under the same section, flour dust was identified as the causative factor of the disabling pulmonary fibrosis and emphysema; *cf. Utter-Bambrick, supra* note 4, where, in a case involving Section 108(n) of the Disease Act, asbestos was identified as the causative factor of the fatal lung cancers. *See generally* note 4, *supra*.

As discussed in note 2, *supra*, the other subsections of Section 108 of the Compensation Act indicate the causative factors of the respective diseases. Most causative factors are specifically identified. *See* subsections (a)-(h), (j), (k), (*l*), (p) and (q). Other causative factors are generally described, presumably because they cannot reasonably be identified more specifically. *See* subsections (i) and (o).

[7] There is some authority for the proposition that the mere presence of the causative factors of a disease is not sufficient to

The claimant must also demonstrate that the disease is causally related to the industry or occupation and that the incidence of the disease is substantially greater in the industry or occupation than in the general population. These requirements serve to establish the occupational impact of the disease and to distinguish those diseases which are not occupational in nature. Accordingly, evidence of the conditions in the industry or occupation is necessary; it is not enough to demonstrate that in a particular factory a disease constitutes a hazard.[8]

Having established an occupational disease under Section 108(n), a claimant must next prove that the disease arose out of and in the course of his employment.[9] An occupational disease which is caused by the conditions of the employer's premises is included among those compensable diseases which arise in the course of employment. *See* Section 301(c) of the Compensation Act, 77 P.S. §411.

The course-of-employment requirement may be satisfied in two ways. On the one hand, a claimant may, by specified proof, bring himself within the rebuttable presumption of Section 301(e) of the Compensation Act, 77 P.S. §413:[10]

---

support a finding of hazard where the presence was not significant. *See ISC, supra* note 6, 28 Pa. Commonwealth Ct. at 88 n. 6, 367 A.2d at 380 n. 6; *cf. Moyer v. Brockway Clay Co.*, 14 Pa. Commonwealth Ct. 610, 324 A.2d 876 (1974) (in a case under the Disease Act, mere proof that silica dust existed at plant not sufficient to prove that silicosis is a hazard in industry or occupation or in particular factory); *Scott, supra* note 4 (in a case under the Disease Act, cancer *could have been* a hazard where cancer-producing agents were present).

[8] *See* note 4, *supra.*

[9] *Cf. Scott, supra* note 4 (dealing with a claim under the Disease Act).

[10] *Added* by the Act of October 17, 1972, P.L. 930, §3.

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

By the terms of the statute, an employee must demonstrate, *inter alia*, that a disease is a hazard in his industry or occupation[11] before he can get the benefit of this rebuttable presumption.[12] On the other hand, if a claimant proves that the particular plant or place of business where he was employed constituted an occupational disease hazard, the claimant has no need for the presumption. *Cf. Metz, supra* note 4 (construing identical language in Section 301(f) of The Pennsylvania Occupational Disease Act, 77 P.S. §1401(f)). Thus the course-of-employment requirement may also be satisfied by evidence from which the compensation authorities may properly infer that an occupational disease hazard existed at the particular place where the claimant was employed. *Cf. McGarvey, supra* note

---

[11] *See* note 4, *supra*.

[12] *Cf. Moyer, supra* note 7; *Scott, supra* note 4; *Metz supra* note 4, all of which construe identical language in Section 301(f) of the Disease Act. *But see Jones & Laughlin Steel Corp. v. Golmitz*, 28 Pa. Commonwealth Ct. 25, 367 A.2d 323 (1976) (claimant may benefit from rebuttable presumption by showing either factory hazard or industry or occupation hazard), *allocatur denied* (1977); *but cf. Scobbo v. Heppenstall Co.*, 22 Pa. Commonwealth Ct. 109, 348 A.2d 169 (1975) (evidence that where claimant worked he was exposed to dust and sand sufficient to raise the presumption of Section 301(f) of the Disease Act); *Billet v. Keystone Roofing Manufacturing Co.*, 6 Pa. Commonwealth Ct. 23, 291 A.2d 921 (1972) (claimant under the Disease Act may benefit from rebuttable presumption by showing either factory hazard or industry or occupation hazard).

4 (construing identical language in Section 301(f) of the Disease Act).

Turning now to the case at bar, we will deal with Fruehauf's three assertions. The first assertion concerns an alleged lack of substantial evidence to support a finding that Cornell was exposed to a hazard or that any such hazard was related to the disease of arc welders' pneumoconiosis. Specifically, Fruehauf contends that Cornell neither identified the specific factors to which he was exposed nor demonstrated that those factors were related to the disease. Thus, Fruehauf essentially questions whether the first requirement of Section 108(n) has been met. We hold that it has.

Cornell has shown that arc welders' pneumoconiosis is a hazard of his employment and that he was exposed to it. Dr. Silverman, the pulmonary disease specialist, supplied expert testimony sufficient to establish dust as the causative factor of pneumoconiosis. The particular dust, smoke, and fumes to which Cornell was exposed as an arc welder were generally described by him as arising from the arc-striking process. In lieu of a statutory requirement of greater specificity,[13] we cannot say this description was unreasonable or insufficient, especially considering the variety and complexity of the materials involved. Cornell also testified that the fumes were abundantly and regularly present and that they would come up under his hood whenever he welded. Because Cornell has reasonably described the causative factors of arc welders' pneumoconiosis, shown that such factors were significantly present in his employment, and demonstrated that he was exposed to the significant presence, he has satisfied the first requirement of subsection (n).

---

[13] *See* notes 2 and 6, *supra*.

Fruehauf also suggests that Cornell failed to establish that the disease arose out of and in the course of his employment with Fruehauf. In this regard, Fruehauf asserts that, because Cornell did not establish that he was employed in an occupation in which arc welders' pneumoconiosis is a hazard, he is not entitled to the benefit of the rebuttable presumption of Section 301(e) of the Compensation Act. We disagree.

We hold that Cornell has, by competent evidence, satisfied the course-of-employment requirement. We have previously concluded that he established the disease as a hazard of his employment. In addition, Cornell demonstrated, through the expert testimony of Dr. Silverman, that the disease is peculiar to arc welders and that it is not a disease the general population can contract. Dr. Silverman's testimony on these points is competent evidence, *see Imperial Food Products, supra* note 6, and is sufficient to establish that in the *occupation* of arc welding the disease is a hazard. Because Cornell's proof also indicates that immediately before the date of disability he was employed by Fruehauf as an arc welder, he is entitled to the benefit of the Section 301(e) presumption.

Additionally, Cornell adduced evidence from which the compensation authorities could permissibly infer that an occupational disease was a hazard at the particular place where he was employed. Thus, Cornell did not need the rebuttable presumption to satisfy the course-of-employment requirement. *See* Section 301 (c) of the Compensation Act; *cf. McGarvey, supra* note 4; *Metz, supra* note 4.

We have found no merit in any of Fruehauf's contentions. Rather, we conclude that by competent evidence Cornell has satisfied the statutory requirements of the Compensation Act. The award of benefits is therefore affirmed.

## Order

And Now, this 28th day of July, 1977, the appeal of Fruehauf Corporation is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated July 22, 1976, is affirmed. Accordingly, it is ordered that judgment be entered in favor of Howard W. Cornell and against Fruehauf Corporation, Independent Metal Division, and Continental Casualty Company, in the amount of $106 per week, beginning January 10, 1975 and continuing until such time as disability changes in nature or extent or ceases and terminates, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, Fruehauf Corporation, Independent Metal Division, and Continental Casualty Company are directed to pay the following reasonable costs of prosecution by reimbursement to claimant's counsel:

Dr. J. D. Silverman
    Examination and deposition        $285.00
Nawanna M. Templeton
    Stenographer for deposition        99.00

Fruehauf Corporation, Independent Metal Division, and Continental Casualty Company are further directed to pay approved attorney's fees of $1,950 directly to claimant's counsel, C. Jerome Moschetta, Esquire, from the deferred compensation due the claimant. All remaining compensation, together with interest, is to be paid directly to Howard W. Cornell.