Crucible Steel (Colt Industries), Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Mabel Dorsey, Widow of William H., Respondents.

Commonwealth of Pennsylvania, Department of Labor and Industry, Intervenor.

Argued November 21, 1980, before Judges WILKIN-
SON, JR., BLATT and MACPHAIL, sitting as a panel of
three.

*Joseph A. Fricker, Jr.,* for petitioner.

*Edwin H. Beachler,* with him *William R. Caroselli,
McArdle, Caroselli, Spagnoli & Beachler,* for respon-
dent, Mabel Dorsey.

*Lisa Roth,* Assistant Attorney General, for inter-
venor.

OPINION BY JUDGE WILKINSON, JR., December 12,
1980:

Petitioner appeals from an order of the Work-
men's Compensation Appeal Board (Board) affirm-
ing an award of compensation payable to the surviv-
ing dependent widow of the claimant in the initial
claim petition. We affirm.

Decedent worked for petitioner from September
14, 1942 to July 23, 1974. Until July of 1972 dece-
dent worked as a laborer in the petitioner's coke and
coal handling department; he worked primarily in
the bunker bins, breaker room, and mixing room.

From July 1972 to July 1974, decedent was employed as a senior operator in the coal handling department; in the performance of his duties decedent continued to spend time in the bunker bins. Throughout his employment decedent was exposed to coal dust in moderate to heavy concentrations, to coke, and to other noxious dusts, gases, and fumes. On May 19, 1975 decedent filed a claim petition under Section 108(n) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, *as amended,* 77 P.S. §27.1(n),[1] alleging that on May 6, 1975 he became totally disabled as the result of cancer of the right lung and pulmonary emphysema. After decedent died on February 7, 1976, his widow filed a fatal claim petition. The fatal claim petition alleged that decedent died from carcinoma of the right lung, chronic obstructive pulmonary disease, and cor-pulmonale as a result of his multiple exposure to coal dust, the coking process, and heat. The claims were consolidated.

Hearings before the referee were held in 1976 and 1977, and a view of the decedent's work area was made in July 1977. The referee found that decedent's

---

[1] The term "occupational disease" as used in this act, shall mean only the following diseases.

. . . .

(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause, partial loss of hearing in one or both ears due to noise; and the diseases, silicosis, anthracosilicosis and coal worker's pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

77 P.S. §27.1(n).

exposure to excessive amounts of coal dust, coke, and other noxious gases was a significant factor and primary cause of the lung cancer and extensive, chronic and acute pulmonary disease that resulted in the decedent's disability during his life and eventual death. During the course of the hearings and by letter dated February 27, 1976, the referee dismissed the Commonwealth as a party defendant because the record, as it then stood, indicated that the decedent's disability was not the result of any occupational disease enumerated in Section 108(q) of the Act, 77 P.S. §21.7(q). Upon appeal from the referee's award of benefits, the Board concluded there was competent evidence of record to support each of the findings the referee made. Making modifications concerning medical expenses, costs of prosecution, and counsel fees, the Board affirmed the referee's decision.

For recovery in a case like this, it has to be proven that the employee was disabled as a result of an occupational disease within the meaning of the Act and that his disease arose out of and during the course of his employment. *See Armco Steel Corp. v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 443, 402 A.2d 563 (1979); *Fruehauf Corp. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 341, 376 A.2d 277 (1977). To meet the first requirement, the decedent alleged in his claim petition that his disorders fell within Section 108(n) of the Act. That section

> requires that a claimant be exposed to a disease by reason of his employment. Stated differently, a claimant must show that the occupational disease is a hazard of his employment and that he was exposed to it. To satisfy this requirement, a claimant may reasonably identify or describe the causative factors of the

disease, demonstrate that the factors are significantly present in his employment, and show that he was exposed to this significant presence.

The claimant must also demonstrate that the disease is causally related to the industry or occupation and that the incidence of the disease is substantially greater in the industry or occupation than in the general population. These requirements serve to establish the occupational impact of the disease and to distinguish those diseases which are not occupational in nature. (Footnotes omitted.)

*Fruehauf Corp., id.* at 346-48, 376 A.2d at 279-80.

The decedent's expert witness, a certified specialist in internal medicine who had previously examined other steel workers suffering from lung cancer, examined the decedent and ran several diagnostic tests. It was this doctor's opinion that the decedent was totally and permanently disabled due to chronic obstructive lung disease and lung cancer, and that decedent's condition resulted to a significant degree from his cumulative exposure to gases, dusts and fumes. The decedent's testimony that he was constantly exposed to and inhaled the gases, dusts and fumes emanating from the coke batteries, and the doctor's testimony that the decedent's diseases were causally related to decedent's occupation and that the incidence of these diseases is substantially greater in the steel industry than in the general population, satisfied the elements of Section 108(n).

"Having established an occupational disease under Section 108(n), a claimant must next prove that the disease arose out of and in the course of his employment." *Fruehauf Corp., id.* at 348, 376 A.2d at 281 (footnote omitted). A claimant may satisfy the

course of employment requirement by using the rebuttable presumption contained in Section 301(e) of the Act, added by Section 3 of the Act of October 17, 1972, P.L. 930, 77 P.S. §413:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

To rebut the decedent's evidence and the Section 301(e) presumption, petitioner offered the testimony of an industrial hygienist and toxicologist, who in July 1975 conducted air sampling tests at the decedent's work place and concluded that the decedent had not been exposed to hazardous amounts of coal dust, nor to any coal or coal tar pitch volatiles.

In this appeal, petitioner contends that the referee's failure to find that the report by and testimony of the industrial hygienist and toxicologist rebutted the Section 301(e) presumption constituted a capricious disregard of competent evidence.

> Bearing in mind that matters of credibility and the weight of the evidence are for the referee to resolve and that he is not ordinarily bound to accept as true even uncontradicted testimony, we may not disturb [the result below] . . . unless there has been a 'capricious disregard of competent evidence' . . . In other words, the factfinder is not bound to accept as true *any* evidence unless that evidence is such that one of ordinary intelligence could not possibly challenge or entertain the slightest doubts as to its truth.

*Penwalt, Stokes Division v. Workmen's Compensation Appeal Board,* 44 Pa. Commonwealth Ct. 98, 102, 403 A.2d 186, 188 (1979) (citations omitted; emphasis in original). We do not believe the evidence of concern here was of such quality. The referee considered it necessary to conduct a tour of the work place for the purpose of determining credibility. Further, inspections for dust concentration sampling done more than a year after an employee leaves work have been considered insufficient to rebut the Section 301(e) presumption. *Scobbo v. Heppenstall Co.,* 22 Pa. Commonwealth Ct. 109, 348 A.2d 169 (1975).

Petitioner also contends that the referee erred in dismissing the Commonwealth as a party defendant before the conclusion of all the testimony in both of the consolidated cases. The Commonwealth was dismissed after witnesses for the claimant testified. In order to have liability imposed upon the Commonwealth under Section 305.1 of the Act,[2] it had to be established that the employee became disabled as the result of one of the diseases enumerated in Section 108(q) of the Act. Our extensive review of the record reveals that this was not established. There is no evidence that decedent's disability and death were caused by silicosis, anthraco-silicosis, or coal worker's pneumoconiosis. The only testimony dealing with any of those three may be found in the record where on cross-examination the claimant's expert medical witness, in commenting on a sentence from the autopsy report reading "There was marked anthacosis bilaterally, and pulmonary fibrosis, specially in the right lung," remarked

> Anthracosilicosis is a different situation from anthracosis. However, the microscopic find-

---

[2] Added by Section 2 of the Act of December 6, 1972, P.L. 1627, 77 P.S. §411.1.

ings make me wonder whether the description of the anthracosis was accurate. . . . [T]he description of anthracosis alone was accurate because you are quite right when you say that anthracosis is carbon particles, per se, and are not indicative of the disease process. But then, quite the contrary, the pathology described here is that of anthracosilicosis or anthracosis combined with some other pneumoconiosis.

. . . I would say the anthracosis . . . may be an inadequate or incomplete description by the pathologist in the actual state of affairs.

While we do not condone the referee's dismissal of the Commonwealth as a party at the end of the claimant's case, and before the employer, here petitioner, has presented its case, nevertheless in this instance we do not see that petitioner was harmed. It was petitioner's position through the entire case, other than the brief cross-examination referred to above, that claimant was not disabled from any qualifying disease.

Examination of the record, including the testimony of the petitioner's expert medical witness, leads us to conclude that the referee did not erroneously fail to make a finding on the existence or absence of Section 108(q) diseases. A fact finder is not required to affirmatively declare that he has considered each and every item of evidence placed into the record. The referee made findings on the disease claimant did have; he need not make findings on those diseases claimant did not have. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 292, 395 A.2d 322 (1978). We therefore must reject the petitioner's arguments for a remand.

Accordingly, we will enter the following

ORDER

AND Now, December 12, 1980, the order of the Workmen's Compensation Appeal Board, Docket No. A-73859, dated January 24, 1980, is affirmed. It is directed that judgment be entered in favor of the surviving dependent widow, Mabel J. Dorsey and against Crucible Steel for compensation in the amount of $4,496.14. Crucible Steel is further directed to pay the surviving dependent widow compensation at the rate of $106.00 per week beginning February 7, 1976; interest is payable on all deferred payments of compensation at the rate of ten percent per annum. Crucible Steel is directed to take subrogation against the award in the total amount of $299.11 for sick and accident benefits paid the decedent.

Crucible Steel is directed to reimburse the surviving dependent widow for reasonable funeral expenses incurred in the amount of $1,500.00. Crucible Steel is directed to pay the following reasonable medical expenses:

Veterans Administration Hospital
University Drive C
Pittsburgh, PA 15240                    $11,249.00

Crucible Steel is further directed to reimburse the decedent, through his counsel, for reasonable costs of prosecution incurred in the total amount of $744.70. Attorney's fees in the sum of 20 percent of the benefits paid to the claimant for a total of two years are approved, and Crucible Steel is directed to deduct said amount from the deferred payments of compensation due the surviving dependent widow and to forward it together with the aforementioned costs of prosecution directly to Edwin H. Beachler, Esquire,

1100 Law and Finance Building, Pittsburgh, PA 15219.

All remaining payments of compensation and interest shall be paid directly to Mabel J. Dorsey.