Colt Industries, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Calvin Montgomery, Respondents.

464

Argued November 20, 1980, before Judges WILKINSON, JR., MACPHAIL and WILLIAM, JR., sitting as a panel of three.

*Joseph A. Fricker, Jr.,* for petitioner.

*Benjamin L. Costello, Yablonski, King, Costello & Leckie,* for respondent, Calvin Montgomery.

OPINION BY JUDGE WILLIAMS, JR., March 12, 1981:

In this appeal Colt Industries (Colt) seeks reversal of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to claimant Calvin Montgomery. The award was made pursuant to the occupational disease provisions of The Pennsylvania Workmen's Compensation Act.[1]

Claimant Montgomery was employed for about thirty years as a boiler operator[2] at a steel mill which is owned by Colt. On February 18, 1977, acting on the advice of his physician, the claimant quit his job because of breathing problems. The claimant was subsequently examined by a Dr. Jerry D. Silverman, on July 25, 1977. According to Dr. Silverman's report, dated July 28, 1977, the claimant was totally and permanently disabled from pneumoconiosis, namely anthraco-silicosis, and from chronic asthmatic bronchitis and pulmonary emphysema both diffuse and bullous. Dr. Silverman's report also concluded that the claimant's condition was a result of his total and cumulative exposure to coal dust while working in a steel mill, and that the condition was aggravated by exposure to fumes arising from the combustion of oil in the boilers with which claimant worked.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 *et seq.*

[2] The claimant actually started working for Colt's predecessor in 1935. Exclusive of two years as boiler operator prior to entering the military service in 1943, the claimant's continuous career as a boiler operator began around 1947.

The claimant testified before the referee that he learned of Dr. Silverman't report in early August 1977 and that it was the first he knew he was disabled from an occupational disease. On August 10, 1977, the claimant notified the employer of his condition by certified mail. On that last mentioned date the claimant filed a claim petition under Section 108 of the Workmen's Compensation Act,[3] asserting that he was totally disabled from pneumoconiosis contracted from exposure to dust while working in the steel mill. The alleged period of exposure was from July 1, 1973, to February 1, 1977; and the alleged date of disability was July 28, 1977.

The claimant testified that there was dust throughout the entire building in which he worked. He stated that the building containing the boilers also housed a coal grinder or pulverizer, and that adjacent to the building was a blast furnace. According to the claimant he was exposed to pulverized coke dust from the grinder, dust from the blast furnace and dust from the slag pits, in the course of his work as a boiler operator. He added that he was also exposed to oil fumes from the boiler and coke gas fumes from the blast furnace.

The claimant's evidence before the referee also included the depositions of Dr. Silverman and a Dr. Thomas W. McCreary. Dr. Silverman repeated his opinion that the claimant was totally and permanently disabled from anthraco-silicosis, emphysema and chronic asthmatic bronchitis, and that these conditions occurred as a result of the claimant's total and cumulative exposure to coal dust while working in a steel mill, with aggravation of the condition resulting from exposure to fumes. Dr. Silverman added that the bronchitis was a complication caused by the anthraco-silicosis. In the opinion of Dr. Silverman the claim-

[3] Added by Section 1 of the Act of October 17, 1972, P.L. 930, as amended, 77 P.S. §27.1.

ant's anthraco-silicosis and bronchitis were occupationally related.

According to the testimony of Dr. McCreary, the claimant suffered from chronic bronchitis that had been aggravated by exposure to coal dust, iron ore dust, fumes, and long-term cigarette smoking. It was Dr. McCreary's opinion that chronic bronchitis and emphysema are occupational hazards of the steel industry. He also stated that the claimant had symptoms that were *typical of or compatible with* coal workers pneumoconiosis, and that because of the claimant's pulmonary condition he was *probably* totally and permanently disabled.[4]

It is clear from the referee's findings that he accepted the claimant's description of his working conditions and the dust exposure. In that regard, the referee conducted a view of the boiler house in the presence of parties and counsel. It is also clear that the referee accepted the testimony of the claimant's medical witnesses: The referee found that the claimant was totally and permanently disabled due to anthraco-silicosis and chronic asthmatic bronchitis with complications of emphysema, all of which resulted from, or was in part aggravated by, the claimant's total and cumulative exposure to dusts and fumes during his employ in Colt's boiler house.

It was also the referee's finding that the claimant was first advised and first became aware in August 1977 of his *disability* from occupational diseases, and that the claimant gave his employer statutory notice on August 10, 1977.

In awarding benefits the referee concluded that the claimant had sustained occupational diseases within the definition of Section 108(n) and (q) of the Work-

---

[4] Accordingly, Dr. McCreary's testimony was not contradictory of Dr. Silverman's opinion.

468

men's Compensation Act.[5] It was also concluded that the claimant was entitled to the statutory presumption under Section 301(e) of the Act:[6] that his occupational diseases arose out of and in the course of his employment.

It must be emphasized that the referee found the claimant had contracted two "occupational" diseases, anthraco-silicosis and chronic asthmatic bronchitis. However, bronchitis is not one of the specifically enumerated diseases under Section 108 of the Act and can only be deemed an occupational disease if the claimant's proof satisfies all the requirements of Section 108(n), the omnibus or "catch-all" provision. In that regard, the claimant would have to establish that the incidence of chronic bronchitis was *substantially* greater in his industry or occupation than in the general population.[7] *Roofner v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 218, 392 A.2d 346 (1978). In the case at bar, the claimant's only direct evidence of the comparative incidence of chronic bronchitis in his industry was the testimony of Dr. McCreary, who indicated only that it occurred with a "greater degree or frequency" in the steel industry than in the general population. That was not sufficient to prove that the incidence was *substantially greater*, which is the proof mandated by Section 108 (n). *County of Allegheny v. Gallo*, 49 Pa. Commonwealth Ct. 506, 411 A.2d 877 (1980). Upon the evidence in this case it was error for the referee to conclude that the claimant's chronic bronchitis was an "occupational" disease.

[5] 77 P.S. §§27.1(n), (q).

[6] Added by Section 3 of the Act of October 17, 1972, P.L. 930, 77 P.S. §413.

[7] The other required proof elements under Section 108(n) are: (1) that the disease is one to which the claimant was exposed by reason of his employment and (2) that the disease is causally related to the industry or occupation.

However, the referee also found that the claimant had contracted anthraco-silicosis while working in Colt's steel mill.[8] That disease is specifically declared to be an occupational disease by Section 108(q) of the Act, and thus the claimant had no burden of proving the comparative incidence of that disease to come within the statutory definition of an occupational disease. The testimony of Dr. Silverman provided substantial evidence that the claimant had anthraco-silicosis. Accordingly, the referee's finding that the claimant had the disease may not be disturbed by this Court. *E.g., Ricciardi v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 316, 383 A.2d 571 (1978).

Having established an occupational disease, anthraco-silicosis, the claimant had next to prove that the disease arose out of and in the course of his employment. *Fruehauf Corp. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 341, 376 A.2d 277 (1977). A claimant may satisfy the course-of-employment requirement in two ways: He may present such proof that brings him within the rebuttable presumption in Section 301(e) of the Act; or he may prove that the particular plant or place where he worked presented an occupational disease hazard. Thus, the course-of-employment requirement may be satisfied by evidence from which the compensation authorities may properly infer that an occupational disease hazard existed at the particular place where the claimant was employed. *Id.*

Appellant Colt contests the referee's conclusion that the claimant was entitled to the assistance of the Section 301(e) presumption in proving that his dis-

---

[8] It must be emphasized that according to Dr. Silverman's opinion the anthraco-silicosis was the *basic disease entity* of the claimant's condition.

ease arose out of or in the course of his employment. In that challenge the appellant asserts there was not sufficient evidence to bring the presumption into operation. The appellant also asserts that the referee misapplied the presumption by making it a conclusive substitute for actual proof, and that the statutory presumption itself works a denial of due process. In none of these assertions is there any basis for appellate relief.

The appellant's assertions are tantamount to arguing that the claimant did not sufficiently and validly prove that his anthraco-silicosis arose out of and in the course of his employment at the steel mill. That argument must fail. The referee had before him substantial evidence from which he could find that an occupational disease hazard existed at the particular place where the claimant was employed; and the referee did so find. The claimant described the coal dust and other dusts in which he worked; and Dr. Silverman reported and testified that the claimant had contracted anthraco-silicosis from exposure to coal dust while working in a steel mill. The referee, after making a view of the claimant's work place, accepted the claimant's description of his working conditions and concluded that the work place exposed the claimant to the hazards of noxious dusts and fumes, including coal dust, fly ash dust and coke gas fumes, while employed there from 1947 to September 1971 and for three months in late 1976.[9] Assuming, *arguendo,* that the appellant's challenges to the presumption had even a color of merit, the claimant satisfied the course-of-employment requirement by the second method of proof set forth in *Fruehauf.*

---

[9] According to the claimant the boilers were operated with coal until 1972, when they were converted to oil. He added that they were reconverted to coal in January 1977, about a month before he quit.

As a final matter the appellant contests the referee's conclusion that the claimant satisfied the notice requirement of Section 311 of the Workmen's Compensation Act.[10] The effect of that Section on this case is that if the claimant did not notify the employer of the disability within 120 days of the time the claimant knew or should have known of the disability and its possible relationship to his employment, no compensation could be allowed. We have held that the 120-day notice period does not begin to run until five elements coalesce in the claimant: (1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to his employment. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 74, 407 A.2d 117 (1979).

The appellant's notice argument is directed to the issue of *when* the claimant should be deemed to have had actual or constructive knowledge of his disability and its possible relationship to his employment, that is, when the the claimant *knew or should have known.* As to that point the referee found, as we have observed, that the claimant was first advised and first became aware in August 1977 that his *disability* resulted from an occupational disease. That finding was based on the claimant's own testimony to that effect. And, the acceptance of that testimony was clearly within the referee's province as fact-finder. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Therefore, the referee's finding as to when the claimant was first advised and became aware of his disability due to an occupational disease may not be disturbed by this Court. *Ricciardi, supra.*

---

[10] 77 P.S. §631.

In arguing further that the claimant *should have known* as early as February, 1977, the appellant points to a statement contained in the report of one of the claimant's medical witnesses, Dr. Silverman. That statement from Dr. Silverman's report was that the claimant had seen *another physician* about January, 1977, *by whom* the claimant "was told that he had Black Lung Disease and emphysema."

Even if we assume that in January or February, 1977, the claimant was told he had "Black Lung Disease and emphysema," there were several inferences the referee could draw from that. The referee could infer that the claimant did not understand what he was told at that time. Or, the referee could infer that the claimant understood he had anthraco-silicosis but did not understand he was totally *disabled* by it. *Republic Steel Corp. v. Workmen's Compensation Appeal Board,*  Pa.  , 421 A.2d 1060 (1980). The referee in the instant case apparently drew the latter inference: For, his conclusion that the claimant had complied with the 120-day rule was based on the finding that the claimant was first advised and made aware of his *disability* from an occupational disease in August 1977, about a week before notice was given to the employer.

Whether or not notice has been given in compliance with Section 311 is a question of fact for the referee. *Katz v. Evening Bulletin,* 485 Pa. 536, 403 A.2d 518 (1979). So too, the question of when a claimant knew or should have known of his *disability* from an occupational disease is also one of fact for the referee to determine. *See Airco Speer Carbon v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 274, 392 A.2d 360 (1978); *McManus v. Rochester & Pittsburgh Coal Co.,* 29 Pa. Commonwealth Ct. 91, 368 A.2d 1365 (1977); *Zacek v. Workmen's Compensation Appeal Board,* 25 Pa. Commonwealth Ct. 199,

359 A.2d 842 (1976). Upon the record in the case at bar we have no basis for disturbing the referee's conclusion that the claimant's notice to his employer, given on August 10, 1977, was timely under Section 311 of the Workmen's Compensation Act.

For the reasons set forth in this opinion, we affirm the Board's order awarding benefits.

### Order

And Now, the 12th day of March, 1981, the order of the Workmen's Compensation Appeal Board at Decision No. A-77046, the above matter, is affirmed; and judgment is entered in favor of claimant Calvin Montgomery and against Colt Industries, a self-insured.

Colt Industries is directed to pay to the claimant compensation at the weekly rate of $199.00, beginning as of July 25, 1977, and continuing indefinitely according to the provisions of the Workmen's Compensation Act.

Colt Industries is directed to take subrogation against the aforementioned award in the total amount of $5,083.43, as itemized in Finding No. 35 of the referee's decision.

Interest is payable on all deferred payments of compensation at the rate of ten percent (10%) per annum.

Colt Industries is further directed to reimburse claimant's counsel for reasonable costs incurred in the total amount of $753.19, as itemized in Finding No. 37 of the referee's decision.

Reasonable attorney fees in the amount of $3,109.46 are aproved; and Colt Industries is directed to deduct $422.96 from the accumulated compensation due the claimant for the period beginning July 25, 1977, through April 28, 1978. Colt Industries shall also deduct $29.85 from each weeks' compensation becoming due and payable to the claimant for the period from

July 29, 1978 through April 18, 1980, inclusive, and to foreward the said deduction, together with the costs of $753.19, directly to Kenneth J. Yablonski, Esquire, 505 Washington Trust Building, Washington, Pennsylvania.

For the successful defense of the claim on appeal the following additional attorney fees are approved and are to be deducted from the compensation payable to the claimant, at the rate of $29.85 per week for the applicable number of weeks involved commencing on April 19, 1980:

Appeal to Workmen's Compensation Appeal Board

9 weeks at $29.85 per week or $268.65

Appeal to Commonwealth Court

13 weeks at $29.85 per week or $388.05

All remaining payments of interest and compensation shall be paid directly to the claimant.

