Crucible, Incorporated, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Ernest A. McDole, Respondents.

Argued October 5, 1981, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*William F. Henkel, Greenlee, Richman, Derrico & Posa,* for petitioner.

*Benjamin L. Costello,* with him *Lawrence R. Chaban, Yablonski, King, Costello & Leckie,* for respondent, Ernest A. McDole.

OPINION BY JUDGE ROGERS, November 13, 1981:

Crucible, Incorporated appeals an order of the Workmen's Compensation Appeal Board which affirmed a referee's award of benefits to claimant,

Ernest McDole, pursuant to the occupational disease provisions of The Pennsylvania Workmen's Compensation Act.[1] Crucible's sole contention on the occasion of this appeal is that the record does not support the referee's finding that the claimant complied with the 120-day notice requirement of Section 311 of the Act.[2]

The claimant is a sixty-five-year-old former employee of the conditioning department of Crucible. In that capacity he labored for thirty-four years as a "scarfer" burning defects out of steel billets and slabs by means of a hand held oxyacetylene torch. The referee, who personally inspected the claimant's work station, found that this occupation exposed him to "various dusts and fumes emanating from the scarfing operation."

On January 7, 1977, the claimant, complaining of a fever and breathing difficulties, consulted a Dr. Boyd who instructed him not to return to work and requested x-rays necessary for a definite diagnosis of the claimant's condition. The claimant also consulted Dr. Hoyt, Crucible's physician. The claimant then requested and Crucible granted sickness and accident benefits for unspecified respiratory problems.

On April 21, 1977, chest x-rays of the claimant were interpreted as indicating the presence of "pulmonary emphysema and changes suggesting a pneumoconiosis." There is no indication that this interpretation was ever communicated to the claimant. In September, 1977, at the request of his legal counsel, the claimant was examined by a Dr. J. D. Silverman.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 *et seq.*

[2] 77 P.S. §631 provides that once a claimant has actual or constructive knowledge that he has a disability which results from an occupational disease and which has a possible relationship to his employment, the claimant must notify the employer within 120 days or be barred from the receipt of compensatory benefits.

Dr. Silverman, by letter dated September 22, 1977, informed the claimant's counsel of a diagnosis of mixed dust pneumoconiosis, chronic asthmatic bronchitis and pulmonary emphysema, which condition constitutes an occupational disease within the meaning of the Act. The referee found that the claimant was not informed of this diagnosis until May 19, 1978, when he was so advised by counsel. The claimant filed a Claim Petition six days later, thereby giving notice to Crucible.

The critical findings of fact are:

24. The claimant was not advised by Dr. Silverman that he was disabled due to an occupational disease. Subsequent to January 7, 1977, the claimant was hospitalized and treated or examined by several physicians but was never advised by any of the physicians that he was disabled due to an occupational disease.

25. The claimant through the exercise or [sic] reasonable diligence first knew and became aware that his disability resulted from an occupational related disease on May 19, 1978.

At the first of several hearings at which Crucible's theory of defense was that the dust produced by scarfing does not generally and did not in the claimant's case lead to disabling pneumoconiosis, the claimant testified on direct examination as follows:

Q. When was the first time that anybody discussed with you what the problem was in your chest and possible relationship to your occupation?

A. That's when I went over to [Kenneth J.] Yablonski [Esquire]. That was in May 19th, I believe it was.

Q. May 19, 1978?

A. Yeah.

The claimant elaborated on cross-examination:

Q. When did you first consult a physician for these breathing difficulties?

A. That would be in January of '77.

Q. Was that Doctor Boyd?

A. Yeah.

Q. Did he tell you the cause of your breathing problems?

A. No.

Q. Did he treat you at all for your breathing problems?

A. Yeah.

Q. Of what did your treatment consist?

A. I went to Liverpool Hospital for x-rays.

Q. Did Doctor Boyd ever tell you the results of those x-rays?

A. Yes, he said, oh, I forget what all he said was wrong. He said I had chest troubles and he said I couldn't go to work no more, that's about what he told me.

. . . .

Q. You testified that you were examined by Dr. Silverman in September 1977, is that correct?

A. Yes.

Q. Did you complain to Doctor Silverman of shortness of breath and chest difficulties?

A. That's right.

Q. After his examination, did he tell you the cause of these breathing problems?

A. No, he didn't say nothing.

This testimony when considered in the light of the claimant's lack of education beyond the seventh grade level provides ample support for the findings of the referee and his conclusion that

20. It would be unreasonable to believe, under the aforementioned circumstances, that the claimant would have known that his breathing problem resulted from an occupational disease until he was advised of that fact by a physician.

Our recent statement in *Colt Industries v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 463, 426 A.2d 743 (1981) is equally applicable here

[T]he referee found, as we have observed, that the claimant was first advised and first became aware in August 1977 that his *disability* resulted from an occupational disease. That finding was based on the claimant's own testimony to that effect. And, the acceptance of that testimony was clearly within the referee's province as a fact-finder. American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Therefore, the referee's finding as to when the claimant was first advised and became aware of his disability due to an occupational disease may not be disturbed by this court. Riccardi [v. Workmen's Compensation Appeal Board, 34 Pa. Commonwealth Ct. 316, 383 A.2d 571 (1978)].

*Id.* at 471, 426 A.2d at 747. *See also Culp Industrial Insulation v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 599, 426 A.2d 1263 (1981); *Duquesne Light Co. v. Workmen's Compensation Appeal Board,* 53 Pa. Commonwealth Ct. 92, 416 A.2d 651 (1980).

Finally, counsel for Crucible argues that the claimant did not provide notice of his disability to his employer within 120 days of the date he knew of it because Dr. Silverman wrote a letter dated September 22, 1977, to the claimant's counsel so advising counsel and the claim petition was not filed until late May,

1978. The employer cites, somewhat disingenuously, *Barnes v. McClinton,* 3 Penrose & Watts 67 (1831) and *Yeager v. United Natural Gas Co.,* 197 Pa. Superior Ct. 25, 176 A.2d 455 (1961) for the asserted proposition that knowledge of a person's attorney must be imputed to the client. These cases stand for no such rule but only for the familiar rule that "notice of an action by a court, board or commission given to the counsel of a party is considered notice to the party. . . ." *Yeager v. United Natural Gas Co.,* 197 Pa. Superior Ct. at 29, 176 A.2d at 456. In addition, the employer failed to show when Dr. Silverman's letter was mailed or when it was received by the claimant's counsel.

Order affirmed. An appropriate judgment Order will follow.

### ORDER

AND Now, this 13th day of November, 1981, it is ordered that judgment be entered in favor of Ernest A. McDole and against Crucible, Incorporated for the payment of Workmen's Compensation benefits at the rate of $199.00 per week commencing on May 24, 1978, and continuing into the indefinite future in accordance with the terms and limitations of the Pennsylvania Workmen's Compensation Act.

All deferred payments of compensation shall bear interest at the rate of ten per centum (10%) per annum.

It is further ordered that Crucible, Incorporated pay the counsel for Ernest McDole $477.00 for the reasonable costs of prosecution. Attorney's fees in the amount of $3,104.40 are approved, and Crucible, Incorporated is directed to deduct the amount of $29.85 from each of the 104 weeks of compensation that becomes due and payable to the claimant during the period beginning on May 24, 1978, and continuing

through May 20, 1980, inclusive, and to forward this amount, together with the aforementioned costs of prosecution directly to Benjamin L. Costello, Esquire, 505 Washington Trust Building, Washington, PA 15301.

It is further ordered that additional attorney's fees are approved and are to be deducted from the compensation due the claimant at the rate of $29.85 per week for each of twenty-seven weeks beginning on May 21, 1980.

All remaining payments of interest and compensation shall be paid by bank drafts in the name of Ernest A. McDole only and shall be forwarded directly to him by first class mail.

AMENDED ORDER

AND Now, this 23rd day of November, 1981, the order of the Workmen's Compensation Appeal Board at Docket No. A-78998 is affirmed, and it is further ordered that judgment be entered in favor of Ernest A. McDole and against Crucible, Incorporated for the payment of Workmen's Compensation benefits at the rate of $199.00 per week commencing on May 24, 1978, and continuing into the indefinite future in accordance with the terms and limitation of the Pennsylvania Workmen's Compensation Act.

All deferred payments of compensation shall bear interest at the rate of ten per centum (10%) per annum.

It is further ordered that Crucible, Incorporated pay the counsel for Ernest McDole $477.00 for the reasonable costs of prosecution. Attorneys' fees in the amount of $3,104.40 are approved, and Crucible, Incorporated is directed to deduct the amount of $29.85 from each of the 104 weeks of compensation that becomes due and payable to the claimant during

374

the period beginning on May 24, 1978, and continuing through May 20, 1980, inclusive, and to forward this amount, together with the aforementioned costs of prosecution directly to Benjamin L. Costello, Esquire, 505 Washington Trust Building, Washington, PA 15301.

It is further ordered that additional attorneys' fees are approved and are to be deducted from the compensation due the claimant at the rate of $29.85 per week for each of twenty-seven weeks beginning on May 21, 1980.

All remaining payments of interest and compensation shall be paid by bank drafts in the name of Ernest A. McDole only and shall be forwarded directly to him by first class mail.