RALPH Y. KOMATSU, Petitioner-Appellant, Appellee, *v.* BOARD OF TRUSTEES, EMPLOYEES' RETIREMENT SYSTEM, STATE OF HAWAII, Respondent-Appellee, Appellant

NO. 9582

(CIVIL NO. 75154)

DECEMBER 24, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ., AND CIRCUIT JUDGE MILKS, IN PLACE OF WAKATSUKI, J., DISQUALIFIED

OPINION OF THE COURT BY NAKAMURA, J.

The Circuit Court of the First Circuit found the cumulative effect of exposure to fungi at work caused Ralph Y. Komatsu, an employee of the City and County of Honolulu, to become permanently incapacitated for duty and concluded he should be awarded service-connected disability retirement benefits pursuant to Hawaii Revised Statutes (HRS) § 88-79(a) (1976). Purporting to be bound by the holding in *Lopez v. Board of Trustees, Employees' Retirement System,* 66 Haw. 127, 657 P.2d 1040 (1983), where we interpreted the language of HRS § 88-77(a), the Intermediate Court of Appeals reversed the circuit court. *Komatsu v. Board of Trustees, Employees' Retirement System,* 5 Haw. App. 279, 687 P.2d 1340 (1984). Certiorari was granted because it appeared *Lopez* had been applied in a manner departing substantially from our intendment. A review of the record confirms our initial impression; thus, we vacate the decision of the Intermediate Court of Appeals and reinstate the order of the circuit court awarding retirement benefits.

I.

Ralph Y. Komatsu was employed as the executive assistant to the City and County Physician from 1969 to October 16, 1981, when his employment was terminated by the City. During the early years of this tenure, the principal situs of his work was an office located at the Maluhia Hospital. But from 1974 until 1979, when he stopped working, he occupied an office in the Pawaa Annex, a municipal office building housing the police and traffic departments and the administrative offices of the Department of Health.

He encountered no serious respiratory problems while his office was at the Maluhia Hospital, though he admittedly experienced occasional "nasal stuffiness" and frontal headaches.

Several years after moving to the Pawaa Annex, Komatsu was beset with severe respiratory disorders and became incapacitated for work. In his application for disability retirement submitted on March 25, 1980, Komatsu claimed he was permanently incapacitated for further performance of duty and the disability was the natural and proximate result of a "bronchial attack" he suffered at home on April 21, 1977.[1] He attributed the attack to his work environment, particularly to an improperly functioning air conditioning system. The onset of his respiratory problems, however, is dated at least a year earlier in several medical reports subsequently submitted to substantiate the claim for retirement benefits.

Upon receipt of Komatsu's application, the State Employees' Retirement System solicited the customary "Employer's Statement Concerning Service-Connected Disability" from the Department of Health. The department acknowledged the episode of April 21, 1977 had been reported, albeit tardily; it agreed the applicant was disabled for duty as a consequence of the accident and the disability

---

[1] Komatsu claimed he was incapacitated for further performance of duty. Thus his application was for the benefits provided by HRS § 88-79(a), which reads:

Service-connected occupational disability retirement. (a) Upon application of a member, or of the head of his department, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no willful negligence on his part, may be retired by the board of trustees for service-connected occupational disability provided that:

(1) In the case of accident occurring after July 1, 1963, the employer shall file with the board a copy of the employer's report of the accident submitted to the bureau of workers' compensation;

(2) An application for retirement is filed with the board within two years of the date of the accident, or the date upon which workers' compensation benefits cease, whichever is later;

(3) Certification is made by the head of the agency in which the member is employed, stating the time, place and conditions of the service performed by the member resulting in his disability and that the disability was not the result of willful negligence on the part of the member; and

(4) The medical board certifies that the member is incapacitated for the further performance of duty, that his incapacity is likely to be permanent.

was not a result of his willful negligence.[2] But it denied he was actually engaged in the performance of duty when the accident occurred.

Thereafter, Komatsu was examined by two physicians at the Retirement System's behest. Each ascribed his medical problem to asthmatic bronchitis. One further characterized Komatsu's ailment as "probable 'air conditioning lung' "; the other furnished this additional comment:

The obstructive defect is most probably caused by his work environment as adequately demonstrated by the fungal cultures, skin testing, and inhalational challenge. This obstructive defect most probably will be permanent.

Since HRS § 88-79(a)(4) makes certification of the applicant's incapacity for the further performance of duty and the permanent nature of such incapacity by the Retirement System's Medical Board a prerequisite for service-connected occupational disability retirement, Komatsu was examined by the three-member board. It found he was indeed incapacitated for duty and the disability was probably permanent. In the Medical Board's opinion, "the claimant's ... physical defect of airway obstruction of his pulmonary system [was] the result of being allergic to the air conditioning system environment at his job." But it found his condition did not arise from the actual performance of work, and recommended a denial of the application by the Board of Trustees of the Employees' Retirement System.

The Trustees rejected the application and apprised Komatsu of a right to "appeal" from the Medical Board's decision.[3] He ap-

---

[2] Certification by the head of the agency employing the applicant is a prerequisite for the award of benefits by the Board of Trustees of the Retirement System. *See* HRS § 88-79(a)(3), *supra* note 1.

[3] The "appeal" at this point of the administrative process is not an appeal in the usual sense of the term, since it is actually the means provided under the Retirement System's rules for the applicant to seek a full-scale hearing on his application for disability retirement.

In Mortensen v. Board of Trustees, Employees' Retirement System, 52 Haw. 212, 473 P.2d 866 (1970), this court held that applicants for benefits under HRS § 88-79 were entitled to trial-type hearings at some point in the administrative process. We said,

constitutional due process and the Hawaii Administrative Procedure Act re-

pealed, averring the Board's "decision clearly [mistook] both the law and facts relating to [his] condition" and that he was "permanently incapacitated for duty as the natural and proximate cumulative result of the environment at his work place." He further alleged the disability was "a natural and proximate cumulative result of an occupational hazard." The appeal was referred to a hearing officer who conducted the only full-scale hearing provided by the Retirement System's procedural rules for a benefit claimant whose claim is contested. *See supra* note 3.

The Hearing Officer's formulation of the issue before him was: "Whether the appellant's [Komatsu's] respiratory dysfunction is the result of an accident or the cumulative result of some occupational hazard." In his Recommended Decision, he discussed the substantial proof adduced in support of the claim, highlighting the testimony of Dr. Bruce Soll, a pulmonary specialist, and Dr. Benjamin Gordon, as well as the documentary evidence consisting of reports from other physicians versed in pulmonary medicine, internal medicine, and immunology. That the Medical Board's consultant, Dr. Ernie Yim, who examined Komatsu shortly after the application for retirement was filed, had rendered an opinion supporting the claimant's position was also noted. And the scanty evidence offered in opposition by the chairman of the Medical Board, the sole medical witness called by the Retirement System, was recounted.

After weighing this evidence, the Hearing Officer outlined his recommended "findings," among which were the following:

H. That the respiratory trauma Appellant experienced on April 21, 1977 was not the result of an accident occurring while in the actual performance of duty within the meaning of Chapter 88, H.R.S.

---

quire that each of the appellants receive a hearing on the contested issues of fact before the Board of Trustees of the Employees' Retirement System. The hearings should be conducted in accordance with the provisions of the Hawaii Administrative Procedure Act embodied in HRS § 91-9 (1968) providing for hearings in contested cases.
*Id.* at 221, 473 P.2d at 872. The proceedings before the hearing officer comprise the trial-type hearing decreed by this court.

I. That the poor circulation from the air conditioning system of the mold contaminants which caused Appellant's respiratory dysfunction constituted an occupational hazard within the meaning of Chapter 88, H.R.S.

And his recommended "conclusions" included one to this effect:

F. That Appellant has established by the preponderance of the evidence a causal connection between his respiratory dysfunction and his office environment.

His final suggestion to the Trustees was that "the Report of the Medical Board dated December 15, 1980 be reversed in that Appellant is incapacitated for further performance of duty and that such incapacity is service-connected under Section 88-79, H.R.S."

The Board of Trustees, however, chose not to heed this counsel. Instead, it fashioned a decision with findings and conclusions reiterating those in the recommended decision for the most part but departing therefrom in a salient respect. The Board "found" the "poor circulation from the air conditioning system of the mold contaminants which caused Appellant's respiratory dysfunction does not constitute an occupational hazard within the meaning of Chapter 88, HRS,"[4] and "concluded" Komatsu failed to meet the burden imposed by HRS § 91-10(5) upon a benefit claimant "to establish that he meets all of the necessary statutory criteria for entitlement to service-connected disability retirement."

## II.

Rebuffed in his quest for retirement benefits by the Board of Trustees despite the favorable findings and conclusions recommended by the hearing officer who heard the evidence, Komatsu sought judicial review of the agency determination pursuant to

---

[4] As we noted earlier, the Board of Trustees does not conduct an evidentiary hearing. It merely reviews the recommended decision of the Hearing Officer and either adopts it as its decision or has another decision drafted by the deputy attorney general assigned to the Retirement System. Since the deputy then assigned to the agency was the attorney who appeared on its behalf before the Hearing Officer, another member of the Attorney General's staff drafted a proposed decision. The claimant was then permitted to file exceptions to the proposed decision. Thereafter, the Board "finalized" the tentative decision.

HRS § 91-14. The circuit court reviewed the record, considered the memoranda submitted by the parties, and heard argument. Concluding that the pertinent finding and conclusion of the Board were not supported by reliable, probative, and substantial evidence and therefore clearly erroneous, it held Komatsu's "working conditions or employment environment constitute[d] an occupational hazard under HRS § 88-79" and his "permanent incapacity [was] service-connected." The Board was therefore directed to award Komatsu disability retirement benefits.

But the entry of judgment against the Trustees some three and one-half years after the submission of his application for retirement did not write an end to Komatsu's pursuit of the benefits provided for occupationally disabled public employees. Further judicial review was sought by the Trustees, and the appeal was assigned to the Intermediate Court of Appeals for decision. The primary issues raised on this appeal were: "Whether Appellant [the Board] correctly interpreted the statutory term 'occupational hazard' as it appears in Hawaii Rev. Stat. § 88-79" and "[w]hether Appellant's determination that Appellee is not entitled to an award of service-connected occupational disability retirement benefits under Hawaii Rev. Stat. § 88-79 is correct." Briefly, the Trustees' thesis on the first issue was that the circuit court "erred when it did not follow the *Lopez* interpretation of the term 'occupational hazard.' " With respect to the second, the Trustees argued the evidence in the record failed to establish a necessary connection between Komatsu's job and his disability and the circuit court had not accorded their decision the presumptive validity to which it was entitled.

Adverting to the absence of a legislative definition of the term in question, the intermediate court agreed *Lopez* was controlling. *Lopez,* it said, "teaches that 'occupational hazard' means, in effect, a hazard peculiar to an occupation which, upon repeated and cumulative exposure to it, will result in a disease causally related to the occupation." *Komatsu v. Board of Trustees, Employees' Retirement System,* 5 Haw. App. at 284, 687 P.2d at 1344. It read our ruling there as imposing a requirement of "proof that the incidence of the claimant's disabling condition . . . 'is substantially greater in [the claimant's] occupation than in the general population.' " *Id.* at 284,

687 P.2d at 1345 (quoting *McHale v. Workmen's Compensation Appeal Board,* 56 Pa. Commw. 344, 348, 425 A.2d 34, 36 (1981)).

Presumably guided by these pronouncements in reviewing the evidence presented to the Hearing Officer, the intermediate court decided:

> There [was] no substantial evidence proving that (1) office workers in general were subjected to equivalent amounts of mold contaminants or fungi from air conditioning systems as was Komatsu in his office, (2) the average office worker has a tendency to contract asthmatic bronchitis because of mold contaminants or fungi in the air conditioning system, and (3) the incidence of asthmatic bronchitis is substantially greater among office workers than the general population.

*Id.* at 284-85, 687 P.2d at 1345. "At best," it said, "the evidence show[ed] that Komatsu's employer failed to furnish him with a proper and safe place in which to work, considering his allergic predisposition." *Id.* at 285-86, 687 P.2d at 1345. The evidence in its view, could "not support a finding or conclusion that asthmatic bronchitis is a 'danger or risk which is inherent in, and concomitant to' the occupation of office workers." *Id.* Thus, the intermediate appellate court ruled Komatsu's disability was not the cumulative result of an "occupational hazard" within the meaning of HRS § 88-79(a) and reversed the circuit court.

### III.

When application for a writ of certiorari was made, we saw reason to grant the petition. There was no dispute about Komatsu's disability for duty, and the Trustees, as well as the appellate court, apparently had no doubt that there was a connection between his employment and the disabling condition.[5] Yet disability retirement was not approved. If the criteria for benefit entitlement established by *Lopez* could be applied to withhold retirement benefits from someone in his plight, we did not contemplate such a consequence.

---

[5] The opinion below stated in relevant part:

There is no dispute that Komatsu's asthmatic bronchitis rendered him permanently incapacitated for duty and that such incapacitation was not through

## A.

The applicant for retirement in *Lopez v. Board of Trustees, Employees' Retirement System,* 66 Haw. 127, 657 P.2d 1040 (1983), was an industrial safety engineer employed by the State Department of Labor and Industrial Relations whose disabling condition had been diagnosed as "manic depressive psychosis." He sought service-connected total disability retirement benefits pursuant to HRS § 88-77 rather than the occupational disability benefits provided by HRS § 88-79, which were sought by Komatsu.[6] Though several physicians who examined Lopez were of an opinion that the stress and pressures he experienced at work contributed to his disability, the Board of Trustees ruled that "disability caused by work pressures and frustrations did not constitute an accident or an occupational hazard within the meaning of HRS § 88-77." *Id.* at 128, 657 P.2d at 1041. The circuit court agreed.

On appeal to this court, Lopez "contend[ed], in effect, that any job-related condition which results in incapacitation for gainful employment or further performance of duty is an occupational hazard." *Id.* at 129, 657 P.2d at 1042. But we feared that if "occupational hazard" could be read so broadly, the term would be "meaningless and without operative effect." *Id.* For pressures and frustrations, we knew, were inherent in employment generally, as they are in life generally. Hence, we strove to give useful meaning to "occupational hazard" for disability retirement purposes.

---

"willful negligence on his part." Regarding causation, the Board found that the "poor circulation from the air conditioning system of the mold contaminants . . . caused [Komatsu's] respiratory dysfunction[.]" Board's Record at 626. The circuit court impliedly determined that the Board's finding was not clearly erroneous by stating that the cumulative effect of the molds or fungi from the air conditioning system circulating in his office caused Komatsu's incapacitation. Komatsu v. Board of Trustees, Employees' Retirement System, 5 Haw. App. at 282, 687 P.2d at 1343.

---

[6] Section 88-77 provides retirement benefits for an employee who has been "permanently incapacitated," whereas § 88-79 provides benefits for an employee who has been "permanently incapacitated for duty." But the language at issue, "the cumulative result of some occupational hazard," appears in both sections, and for present purposes the holding in *Lopez* can be deemed controlling.

"An occupational hazard," we said, "is a danger or risk which is inherent in, and concomitant to a particular occupation. *Cf. Detenbeck v. General Motors Corporation,* 309 N.Y. 558, 132 N.E.2d 840 (1956)." *Id.* We added in elucidation, "the [disability's] causative factors must be those which are not ordinarily incident to employment in general and must be different in character from those found in the general run of occupations. *Fruehauf Corp., Etc. v. Workmen's Compensation,* 31 Pa. Commw. Ct. 341, 376 A.2d 277 (1977)." *Id.* That the inhalation of smoke, toxic gases, chemical fumes, and other toxic vapors by firefighters, police officers, and sewer workers had been statutorily recognized as an "occupational hazard" was also noted. *Id.* at 130, 657 P.2d at 1042. But since the work pressures and frustrations experienced by Lopez "were not exceptionally different from those experienced by other employees in other occupations," we concluded the demands of his job did not constitute an "occupational hazard" for purposes of disability retirement pursuant to HRS § 88-77. *Id.*

### B.

Purporting to apply our definition of the relevant term, the Intermediate Court of Appeals concluded Komatsu could not prevail because of a lack of substantial proof that all office workers worked in environments where air-conditioning systems spewed mold contaminants or fungi, the average office worker would have been affected in the same way he was by the unhealthy situation in his office, and the incidence of bronchial asthma was much higher among office workers than in the general population. *See Komatsu v. Board of Trustees, Employees' Retirement System,* 5 Haw. App. at 284-85, 687 P.2d at 1345.[7] The requirement of such proof would, of course, rule out service-connected disability retirement for

---

[7] The ICA's opinion in relevant part said:

Our review of the record discloses that Komatsu failed to meet these tests. There is no substantial evidence proving that (1) office workers in general were subjected to equivalent amounts of mold contaminants or fungi from air conditioning systems as was Komatsu in his office, (2) the average office worker has a tendency to contract asthmatic bronchitis because of mold contaminants or fungi in the air conditioning system, and (3) the incidence of asthmatic bronchitis is substantially greater among office workers than the general population.

Komatsu v. Board of Trustees, Employees' Retirement System, 5 Haw. App. at 284-85, 687 P.2d at 1345.

Komatsu; and the imposition of similar requisites in other situations would render "occupational hazard" well-nigh meaningless, save for firefighters, police officers, and sewer workers. We neither intended nor envisioned that *Lopez* would be so inhibitive.

Where, as in this case, the employee was exposed to mold or fungi in his particular work environment over a lengthy period and the causal nexus between the exposure and his disability is undisputed,[8] entitlement to service-connected disability retirement benefits is clear. For a danger that accompanies a particular job is an "occupational hazard" if it is not a risk common to employment in general. *Lopez v. Board of Trustees, Employees' Retirement System*, 66 Haw. at 129, 657 P.2d at 1042. And since the peril of noxious organisms emitting from faulty air-conditioning systems is hardly incident to employment generally, we are led to the ineluctable conclusion that the intermediate court erred in holding Komatsu's disability was not the cumulative result of an "occupational hazard."

The decision of the Intermediate Court of Appeals is vacated, and the decision and order of the Circuit Court of the First Circuit is reinstated.

*Jeffrey S. Portnoy (Milton M. Yasunaga* with him on the writ and brief) for Petitioner Komatsu.

---

[8] The ICA agreed "[t]here is no dispute that Komatsu's asthmatic bronchitis rendered him permanently incapacitated for duty and that such incapacitation was not through 'willful negligence on his part.'" *Id.* at 282, 687 P.2d at 1343. It also said:

The evidence shows that Komatsu's office was a small self-contained room with poor air circulation; that three allergenic fungi — penicillium oxalicum, aspergillus ochraceus, and cladosporium cladosporoides — were present in the air conditioning vents and ceiling in the office; that the fungi grew as a slime layer of wet material on the filter and were released in the office by the air-flow system; that Komatsu had an underlying allergic predisposition and medical tests disclosed his sensitivity to those fungi; that although he was sensitive to other allergens, being exposed to a high concentration of the allergenic fungi in his office environment sensitized Komatsu to the fungi in the form of asthmatic bronchitis; and that once sensitized, low concentration of the fungi or other allergens would trigger the sensitization.

*Id.* at 285, 687 P.2d at 1345.

496

*Harriet Yoshida Lewis,* Deputy Attorney General, contra, on the brief for Respondent Board of Trustees.