**Electronically Filed
Supreme Court
SCWC-16-0000355
06-FEB-2020
07:59 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

DEBBIE S. QUEL,
Petitioner/Petitioner-Appellant/Appellant,

vs.

BOARD OF TRUSTEES, EMPLOYEES' RETIREMENT SYSTEM, STATE OF
HAWAI'I,
Respondent/Respondent-Appellee/Appellee

_____

SCWC-16-0000355

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000355; CIVIL NO. 1CC151001308)

FEBRUARY 6, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

In 2008, Debbie Quel ("Quel"), an eighteen-year cafeteria
helper for the State of Hawai'i Department of Education ("DOE"),
applied for "service-connected disability retirement" benefits
pursuant to Hawai'i Revised Statutes ("HRS") § 88-79(a) (Supp.
2007), which provides in relevant part that "any member who has

been permanently incapacitated for duty . . . as the cumulative result of some occupational hazard . . . may be retired by the board for service-connected disability[.]"

There was no dispute that Quel was a "member" "permanently incapacitated for duty" "as the cumulative result of" her working conditions. Quel's application for "service-connected disability retirement" benefits was, however, denied by the Board of Trustees of the Employees' Retirement System of the State of Hawai'i ("ERS Board") on the grounds that the working conditions that caused Quel's permanent incapacity did not constitute an "occupational hazard" as defined by Hawai'i law. The Circuit Court of the First Circuit[1] ("circuit court") and the Intermediate Court of Appeals ("ICA") affirmed.

The ERS Board concluded that although Quel's permanent incapacity was due to the cumulative effects of work-related activities, she failed to meet her burden of establishing that her incapacity resulted from an "occupational hazard." The ERS Board based its decision on Quel's failure to introduce evidence that the "lifting requirements" of her job were "different in character from those in the general run of occupations" testified to by the ERS Medical Board's ("Medical Board") physician chair and "that her work related problems were limited to a relatively few number of occupations."

---

[1]     The Honorable Rhonda A. Nishimura presided.

On certiorari, Quel contends the ICA, circuit court, and ERS Board erred in adopting the definition of "occupational hazard" contained in Hawai'i Administrative Rules ("HAR") § 6-22-2 (effective 1989-2009), which defines the term as "a danger or risk which is inherent in, and concomitant to, a particular occupation or particular job, if [it is] not a risk common to employment in general."  Quel contends HAR § 6-22-2 contravenes HRS § 88-79(a), as HRS § 88-79(a) affords service-connected disability retirement to members for permanent incapacity due to "some occupational hazard."  Quel also asserts error in the ICA and circuit court's affirmance of the ERS Board's conclusion that her permanent incapacity did not result from an "occupational hazard."

We hold that HAR § 6-22-2 correctly defines an "occupational hazard" as "a danger or risk which is inherent in, and concomitant to, a particular occupation or particular job, if [it is] not a risk common to employment in general[,]" as the definition is based on our decisions in Lopez v. Bd. of Trs., Emps.' Ret. Sys., 66 Haw. 127, 129, 657 P.2d 1040, 1042 (1983), and Komatsu v. Bd. of Trs., Emps.' Ret. Sys., 67 Haw. 485, 494, 693 P.2d 405, 411 (1984).  We further hold that the definition of "occupational hazard" for purposes of service-connected disability retirement benefits does not include a requirement that permanent incapacity resulting from the cumulative effects

of work-related activities be "limited to a relatively few number of occupations."  Finally, we also hold that the ERS Board clearly erred in finding and concluding that Quel's permanent capacity did not result from "a danger or risk which is inherent in, and concomitant to," her "particular occupation or particular job," which was "not a risk common to employment in general."

Accordingly, we vacate the ICA's July 6, 2018 judgment on appeal and the circuit court's April 13, 2016 (1) "Decision and Order Affirming the Final Decision of the Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Appellant Debbie S. Quel's Appeal" and (2) final judgment.  We remand this case to the ERS Board for further proceedings consistent with this opinion.

## II.  Background

### A.    Factual background

Quel worked for the DOE at Waialua Elementary School, Mililani High School, Haleiwa Elementary School, and Wahiawa Elementary School, before transferring to Helemano Elementary School ("Helemano").

At Helemano, Quel's daily duties as a cafeteria helper involved lifting heavy trap doors, putting things into the oven for breakfast, scooping rice with her left hand for about 250 trays, pinching dough, peeling potatoes, cutting vegetables,

4

opening numerous cans with an old-fashioned manual can opener, carrying heavy boxes or cases of food products, and serving the meals to the students.  She also helped cook rice in the oven.  Because Helemano did not have rice cookers, to cook the rice, she would wash the rice in the morning, place the rice into six or seven eight-inch pans, then lift and slide the pans over her head into the oven, which was taller than Quel.  She also emptied the vegetables and other food out of the pots used to make stew.  During Quel's testimony, she explained that Helemano did not have the equipment common in other school cafeterias -- such as rice cookers, electric can openers, and machines for cutting vegetables or bread -- which increased the repetitive labor she had to do every day.  In the summer, Quel did custodial-type work, such as buffing floors, shampooing the carpet, moving furniture, and cleaning up.

Quel's last day of work for the DOE at Helemano was on November 12, 2008.  The next day, she was seen by a physician, who evaluated Quel's swollen hands and painful shoulders allegedly caused by repetitive motions and activities at work.  For the next few years, Quel was seen by various physicians for these injuries.  She was diagnosed with various work-related injuries to her hands, wrists, and shoulders, and underwent multiple surgeries to her shoulders, wrists, fingers, and thumb.

**B.     Application for service-connected disability benefits**

On November 22, 2010, Quel applied for service-connected disability retirement benefits with the ERS Board.  The Medical Board issued a report to the ERS Board on August 22, 2012 ("Medical Board Report"), indicating it had reviewed Quel's application; her employment, personnel, workers' compensation, and medical records; and had interviewed Quel.[2]  The Medical Board concluded that Quel was permanently incapacitated for performing her job as a cafeteria helper.  The Medical Board also opined, however, that Quel's permanent incapacity was not "the cumulative result of a danger or risk inherent in and concomitant to" her occupation.

On March 11, 2013, the ERS Board reviewed the Medical Board Report and made a preliminary decision to deny Quel's application for service-connected disability retirement benefits, and informed Quel of her appeal rights.  Quel filed an

---

[2]     HRS § 88-79(d) (2012) provides:

> (d) The board may determine whether or not the disability is the result of an accident occurring while in the actual performance of duty at some definite time and place and that the disability was not the result of wilful negligence on the part of the member.  The board may accept as conclusive:
>
> > (1) The certification made by the head of the agency in which the member is employed; or
> > (2) A finding to this effect by the medical board.

HAR Title 6, Chapter 22 governs procedures for certifications and findings of the Medical Board relating to matters including service-connected disability retirement benefits under HRS § 88-79.  HAR § 6-22-1(2) (effective 1984-2009).

appeal on April 29, 2013, and the matter was referred to the Office of Administrative Hearings. A hearing was conducted on April 10, 2014; Quel and the physician chair of the Medical Board appeared at the hearing, represented by counsel. The hearings officer received and reviewed evidence regarding Quel's employment and medical treatment.

In her post-hearing brief, Quel noted that because the Medical Board had conceded she was permanently incapacitated for further performance of duty as a cafeteria worker, the only issue was whether her repetitive use injuries were the result of occupational hazards from working as a cafeteria helper. Quel asserted the Medical Board's recommended denial of her service-connected disability retirement benefits was based on an erroneously narrow view of "occupational hazard" and not on the causation of her injuries, which was left undisputed. She contended her medical records, as well as her testimony, clearly indicated her injuries were a result of overuse, repetitive use, or cumulative trauma while performing her job, entitling her to service-connected disability retirement benefits. Quel also cited to Komatsu as supporting her position.

In opposition, the Medical Board contended Quel's permanent incapacity was not the cumulative result of an occupational hazard, citing to Lopez, Komatsu, and the definition of "occupational hazard" in HAR § 6-22-2. The Medical Board argued

that repetitive use of hands and shoulders is common to various other occupations, including administrative assistants, custodians, musicians, and medical professionals, all who also use their shoulders and hands at work.  It further argued that Quel's job description as a cafeteria helper did not list any unusual occupational hazards, the use of Quel's hands and shoulders was not uncommon to employment in general, and none of the actions in her job description were inherently dangerous. The Medical Board requested the ERS Board affirm its preliminary decision and deny Quel service-connected disability retirement benefits.

On July 23, 2014, the hearings officer issued a recommended decision containing fifty-one findings of fact ("FOFs") and twenty-nine conclusions of law ("COLs").  On August 28, 2014, the ERS Board issued a proposed decision adopting relevant FOFs and COLs in the hearings officer's recommended decision in their entirety.[3]  After arguments on Quel's exceptions to the proposed decision on May 13, 2015, on June 9, 2015, the ERS Board issued its final decision affirming its proposed decision.

In its FOFs, the ERS Board found in relevant part:

> 46.    Repetitive use of the hands and arms is common to employment in general. . . .

---

[3]    The ERS Board amended COL 1 to indicate that as a noncontributory plan member, Quel's application was actually brought under HRS § 88-285 (Supp. 2005), not HRS § 88-336 (Supp. 2007), which governs hybrid plan members.  As the ERS Board also noted, service-connected disability requirement benefits under HRS § 88-285 are, in any event, adjudged under the requirements set forth in HRS § 88-79.

8

> 47.   Other occupations besides cafeteria helper require repetitive use of a person's hands.  This includes court reporters, clerical workers, people who stock shelves, people who pick strawberries, people who cut hair, dish washers, mail sorters, data entry workers, musicians, people who do sign language, and surgeons. . . .

In its FOFs and COLs, the ERS Board found and concluded in relevant part:

> 16.   [] [The ERS Board] finds and concludes [Quel's] incapacitation was due to the cumulative effects of work related activities.
>
> 17.   That conclusion, however, does not end the analysis of [Quel's] claim.  [Quel's] position appears to be . . . that work related incapacitating injuries due to repetitive work activities equate to an "occupational hazard."  The [ERS Board] concludes, however, that such a position is not in accord with the law applicable to ERS service-connected disability benefits.
>
> 18.   The definition of "occupational hazard" is a legal one that must follow the specific terms of the statutes and regulations applicable to the ERS.
>
>        . . . .
>
> 22.   As the Lopez case explains, the mere fact that a medical condition is job related does not lead to the conclusion that the condition is the result of an occupational hazard.
>
>> An occupational hazard is a danger or risk which is inherent in[] and concomitant to a particular occupation.  To be considered an occupational hazard, the causative factors must be those which are not ordinarily incident to employment in general and must be different in character from those found in the general run of occupations.
>
> 66 Haw. at 129, 657 P.2d at 1042.  [Emphasis omitted.] [Quel] failed to introduce evidence that the lifting requirements were "different in character" from those in the general run of occupations that were the subject of [the Medical Board physician chair's] testimony.
>
> 23.   The [ERS Board] does not interpret the concept of the general run of occupations to automatically include all occupations.  [Emphasis omitted.]  The Medical Board introduced evidence that [Quel's] problems were similar to work related problems across a wide spectrum of occupations. . . . [Quel] had the burden to introduce evidence that her work related problems were limited to a

> relatively few number of occupations, but she failed to do
> so.

(Emphases added.)

Thus, the ERS Board concluded Quel's permanent incapacity did not qualify as an "occupational hazard" because she failed to show that her work-related problems were "different in character from those in the general run of occupations" and "were limited to a relatively few number of occupations." On this basis, the ERS Board ruled that Quel was not entitled to service-connected disability retirement benefits.

## C.   Appeal to the circuit court

Quel filed a notice of appeal to the circuit court. The circuit court concluded Quel failed to carry her burden of proving her permanent incapacity was the cumulative result of an occupational hazard, affirmed the ERS Board, and filed its final judgment on April 13, 2016.

## D.   Appeal to the ICA

Quel further appealed to the ICA. In its May 18, 2018 summary disposition order ("SDO"), the ICA ruled the ERS Board and the circuit court did not err in relying on the definition of "occupational hazard" contained in HAR § 6-22-2. Quel v. Bd. of Trs., Emps.' Ret. Sys., No. CAAP-16-0000355, at 3 (App. May 18, 2018). The ICA also concluded Quel failed to prove her work conditions were "not ordinarily incident to employment in general" and were "different in character from those found in

the general run of occupations." <u>Quel</u>, SDO at 5.  The ICA

affirmed the circuit court's final judgment.  <u>Id.</u>

## D.    Certiorari application

Quel's certiorari application raises one question:

> Whether or not cumulative trauma (i.e., excessive kitchen and cafeteria work of cutting, peeling, chopping, stirring, missing [sic], pinching, lifting and carrying resulting in [Quel's] upper extremity injuries) is an "Occupational Hazard" entitling [Quel] to Service-Connected Disability Retirement benefits with the ERS.

### III.    Standards of Review

## A.    Interpretation of a statute

Statutory interpretation is a question of law reviewable de

novo.  <u>Citizens Against Reckless Dev. v. Zoning Bd. of Appeals</u>,

114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007).  When

interpreting statutes, we look at the following:

> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

114 Hawai'i at 193-94, 159 P.3d at 152-53 (citation omitted).

## B.    Administrative agency appeals

An appellate court reviews administrative decisions by

applying the following standard:

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision.

11

Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan, 87 Hawai'i

217, 229, 953 P.2d 1315, 1327 (1998) (alteration in original

omitted).[4]

## IV. Discussion

## A. The definition of "occupational hazard" in HAR § 6-22-2 is consistent with our case law.

Preliminarily, on certiorari, Quel repeats her contention

that the definition of "occupational hazard" in HAR § 6-22-2

contravenes HAR § 88-79(a). She points out HRS § 88-79(a)

provides that "any member who has been permanently incapacitated

for duty . . . as the cumulative result of some occupational

hazard . . . may be retired by the board for service-connected

disability[.]" She argues that HRS § 88-79(a) does not restrict

"some occupational hazard" to the definition in HAR § 6-22-2, "a

danger or risk which is inherent in, and concomitant to, a

---

[4]     HRS § 91-14 (Supp. 2016), entitled "Judicial review of contested cases," provides in relevant part:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>        (1) In violation of constitutional or statutory provisions;
>        (2) In excess of the statutory authority or jurisdiction of the agency;
>        (3) Made upon unlawful procedure;
>        (4) Affected by other error of law;
>        (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>        (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

particular occupation or particular job, if [it is] not a risk common to employment in general." Quel therefore contends the ICA, circuit court, and ERS Board erred in applying the HAR § 6-22-2 definition of "occupational hazard" to her case.

Quel's contention is without merit, as the definition of "occupational hazard" in HAR § 6-22-2 is derived from our decisions in Lopez and Komatsu.

In Lopez, we held that an "occupational hazard" for service-connected disability retirement purposes "is a danger or risk which is inherent in, and concomitant to a particular occupation," and that the disability's "causative factors must be those which are not ordinarily incident to employment in general and must be different in character from those found in the general run of occupations." 66 Haw. at 129, 657 P.2d at 1042. In that case, a state employee contended the stress and pressures from his job contributed to a mental health-related disability and that he should be eligible for service-connected disability retirement benefits. 66 Haw. at 128, 657 P.2d at 1041. We adopted the definition above and ruled that the pressures and stress in the employee's job were not exceptionally different from those found by other employees in other occupations. 66 Haw. at 130, 657 P.2d at 1042.

The next year, we decided Komatsu, which addressed a city employee's service-connected disability retirement claim for an

obstructive respiratory defect caused by exposure to mold and fungi from a defective workplace air conditioning system, which permanently incapacitated him for further performance of duty. 67 Haw. at 488, 494, 693 P.2d at 407, 411. We examined the employee's specific work environment in addressing whether the work environment constituted an occupational hazard, not whether the exposure to the contaminants that caused the employee's disability was an occupational hazard to office workers in general. 67 Haw. at 494, 693 P.2d at 411-12. We stated:

> Where, as in this case, the employee was exposed to mold or fungi in his particular work environment over a lengthy period and the causal nexus between the exposure and his disability is undisputed, entitlement to service-connected disability retirement benefits is clear. For a danger that accompanies a particular job is an "occupational hazard" if it is not a risk common to employment in general. And since the peril of noxious organisms emitting from faulty air-conditioning systems is hardly incident to employment generally, we are led to the ineluctable conclusion that the intermediate court erred in holding Komatsu's disability was not the cumulative result of an "occupational hazard."

Id. (internal citation and footnote omitted). Therefore, in Komatsu, we ruled that where a causal nexus between a work condition and a disability is undisputed, entitlement to service-connected disability retirement benefits is clear, and a danger that accompanies a particular job is an "occupational hazard" if it is not a risk common to employment in general.

Thus, the definition of "occupational hazard" in HAR § 6-22-2 is an amalgam of our definitions of the term in

14

Lopez and Komatsu.  Quel's contention that the ICA, circuit court, and ERS Board erred in applying the HAR § 6-22-2 definition of "occupational hazard" to her case is therefore without merit.

**B.    An occupational hazard does not require a risk be "limited to a relatively few number of occupations."**

Although the definition of "occupational hazard" quoted by the ERS Board is correct, in denying service-connected disability retirement benefits to Quel, the ERS Board added a requirement to the definition that does not exist in the law. In FOF 47, the ERS Board found that other occupations besides cafeteria helpers require repetitive use of a person's hands, including "court reporters, clerical workers, people who stock shelves, people who pick strawberries, people who cut hair, dish washers, mail sorters, data entry workers, musicians, people who do sign language, and surgeons."  Based on this finding, the ERS Board concluded in COL 23 that Quel's permanent incapacity did not qualify as an "occupational hazard" because she failed to show her work-related problems "were limited to a relatively few number of occupations."

Lopez, Komatsu, and HAR § 6-22-2 do not include a requirement that permanent incapacity resulting from the cumulative effects of work-related activities be "limited to a relatively few number of occupations."  Rather, an "occupational

hazard" is "a danger or risk which is inherent in, and concomitant to, a particular occupation or particular job, if [it is] not a risk common to employment in general."

By defining an occupational hazard to exclude risks common to employment in general, we only excluded "work pressures and frustrations, in and of themselves, [from] constitut[ing] an occupational hazard."[5]  Lopez, 66 Haw. at 129, 657 P.2d at 1042. We did not impose an additional requirement that an employee prove their work-related problems "were limited to a relatively few number of occupations."  In fact, in Komatsu, we rejected a requirement that an employee submit data comparing their employment to other industries, and noted "the imposition of similar requisites in other situations would render 'occupational hazard' well-nigh meaningless . . . .  We neither intended nor envisioned that Lopez would be so inhibitive." Komatsu, 67 Haw. at 494, 693 P.2d at 411.

Even if all of the occupations listed by the ERS Board in FOF 47 were considered, the "danger or risk inherent in, and concomitant to" Quel's "particular occupation or particular job," was "not a risk common to employment in general."  In this regard, the ERS Board also concluded in COL 22 that Quel failed to introduce evidence that "the lifting requirements" of her job

---

[5]    However, in Lopez, we noted that "[i]n the workers' compensation context, however, the appellant's mental infirmity would probably have been compensable."  66 Haw. at 130 n.1, 130, 657 P.2d at 1042 n.1.

were "different in character" from those in the occupations listed in FOF 47.  Even assuming the ERS Board meant to include "repetitive use of hands" in COL 22 as not being "different in character," the ERS Board had also noted that Quel's job duties included placing rice into six or seven eight-inch pans and lifting them into and lowering them from an oven taller than her, emptying food out of stew pots, pinching dough, scooping rice with her left hand for about 250 trays, peeling potatoes, cutting vegetables, and opening numerous cans with an old-fashioned manual can opener instead of an electric can opener.

The cumulative, repetitive work performed by Quel, especially without the proper equipment, which led to the serious injuries to her hands, wrists, and shoulders, requiring multiple surgeries to her shoulders, wrists, fingers, and thumb, and resulting in her permanent incapacity for duty, is not "a risk common to employment in general."  As in Komatsu, a determination of whether an "occupational hazard" exists requires an analysis of whether a specific work environment created the occupational hazard.  The nature of Quel's occupation or job, as well as the lack of proper equipment at her job site, both contributed to her injuries.

Thus, the "danger or risk" "inherent in, and concomitant to" Quel's "particular occupation" as a cafeteria helper, or to her "particular job" at Helemano, was "not a risk common to

employment in general." We therefore also hold the ERS Board erred in concluding Quel's permanent incapacity did not result from "a danger or risk which is inherent in, and concomitant to," her "particular occupation or job," which was "not a risk common to employment in general."

## V. Conclusion

Based on the reasons above, we vacate the ICA's July 6, 2018 judgment on appeal and the circuit court's April 13, 2016 (1) "Decision and Order Affirming the Final Decision of the Appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii and Dismissing Appellant Debbie S. Quel's Appeal" and (2) final judgment. We remand this case to the ERS Board for further proceedings consistent with this opinion.

| | |
|---|---|
| Dan S. Ikehara,<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Elmira K.L. Tsang,<br>(Jodi L.K. Yi<br>with her on the briefs)<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

